# EXHIBIT 1

Electronically Filed
Kinnis Williams, Sr.
Circuit Clerk
Janice Mendiola
2025LA001167
St. Clair County
10/17/2025 9:46 AM
34934541

## IN THE CIRCUIT COURT OF
## THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

**MARCI COLLINS**, Individually and as Special    )
Administrator for the Estate of    )
**MICHAEL COLLINS**,    )
   )
   )
          Plaintiff,    )
   )
vs.    )
   )
**AMEREN ILLINOIS COMPANY**, et. al.,    )
   )
          Defendants.    )

Case No.: <u>2025LA001167</u>

## **AFFIDAVIT**

    This affidavit is made pursuant to Supreme Court Rule 222(b). Under the penalties of

perjury as provided by §1-109 of the Codes of Civil Procedure, the undersigned certifies that the

money damages sought by the plaintiff herein does exceed $50,000.00.

                Respectfully Submitted,

                **GIANARIS TRIAL LAWYERS**

                Attorney for Plaintiff

                <u>/s/ Dirk Hennessey</u>
                Ted N. Gianaris, IL #6237156
                Joshua A. Edelson, IL #6326848
                Suvir Dhar, IL #6304709
                Dirk Hennessey, IL #6311069
                One Design Mesa
                Collinsville, IL 62234
                618-816-9999
                tgianaris@lawforpeople.com
                jedelson@lawforpeople.com
                sdhar@lawforpeople.com
                dirk@lawforpeople.com
                **ATTORNEYS FOR PLAINTIFF**

Electronically Filed
Kinnis Williams, Sr.
Circuit Clerk
Janice Mendiola
2025LA001167
St. Clair County
10/17/2025 9:46 AM
34934541

## IN THE CIRCUIT COURT OF
## THE JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

| | |
|---|---|
| **MARCI COLLINS**, Individually and as Special Administrator for the Estate of **MICHAEL COLLINS**,  ) ) ) )  | |
| Plaintiff,  ) | Case No.: **2025LA001167** |
| vs.  ) ) | |
| **AMEREN ILLINOIS COMPANY**, **R.J. REYNOLDS TOBACCO COMPANY**,  ) ) ) | |
| Defendants.  ) | |

## COMPLAINT

Plaintiff, Marci Collins, Individually and as Special Administrator for the Estate of Michael Collins ("Decedent"), through Ted N. Gianaris, Joshua Edelson, Suvir Dhar, and Dirk Hennessey of Gianaris Trial Lawyers, LLC, states and alleges as follows for the Complaint against the Defendants named herein:

## FACTS COMMON TO ALL COUNTS

1.      Decedent, Michael Collins, was a resident of Jerseyville, Jersey County, Illinois and resided at 26911 Robin Lane, Jerseyville, Jersey County, Illinois 62052 until his death in 2024.

2.      Defendant, Ameren Illinois Company ("Ameren"), is a corporation organized and existing under the laws of Illinois that is authorized to do business in Illinois, which maintains a registered office for service of process in Sangamon County, Illinois and that has, at all times relevant herein, conducted business in St. Clair County, Illinois at or near St. Clair, St. Clair County, Illinois.

3.      Defendant, R.J. Reynolds Tobacco Company ("RJR") is a corporation organized and existing under the laws of North Carolina that is authorized to do business in Illinois, which

maintains a registered office for service of process in Sangamon County, Illinois and that has, at all times relevant herein, conducted business in St. Clair County, Illinois at or near St. Clair, St. Clair County, Illinois.

4.    The foregoing defendants, as set forth in paragraphs 2 through 3, will be collectively referred to as "Defendants" throughout this Complaint and are jointly and severally liable in that they caused or contributed to Decedent's cancer and injuries.

5.    Decedent was born on July 23, 1958, and lived in Illinois nearly his whole life.

6.    From 1978 to 2008 Decedent was a member of the union Plumbers and Pipefitters Local 553 and he worked at various locations within Illinois, where he was exposed to benzene and other toxic chemicals.

7.    Decedent worked at an Ameren facility where he did the same pipefitting work and was exposed to benzene and VOCs while doing said work.

8.    Decedent was diagnosed with bladder cancer on October 20, 2023.

9.    Specifically, decedent was diagnosed with: Bladder, right lateral wall and bladder neck, TURBT: invasive high-grade papillary urothelial carcinoma.

10.   Decedent developed Stage 3 bladder cancer.

11.   As a direct and proximate result of said bladder cancer, Decedent died on April 18, 2024.

12.   This Court has subject matter jurisdiction over this cause, as there is no complete diversity, and personal jurisdiction over all defendants in the State of Illinois as Decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene and benzene-containing products within St. Clair County, Illinois.

13.   Venue is proper in this court under 735 ILCS § 5/2-101(1-2) because St. Clair County, Illinois is the county in which the actions or omissions occurred and out of which the Decedent's cause of action arose.

## COUNT 1 – WRONGFUL DEATH (NEGLIGENCE)
## VS. DEFENDANT AMEREN

1.      Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.      While Defendant Ameren owned and/or operated the facilities and/or the associated refineries/pipelines, and during the times Decedent resided, stayed, worked, and/or spent time near these facilities, thousands of pounds of benzene, other benzene-containing pollutants, and other contaminants were emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water.

3.      While Decedent resided, stayed, spent time, and/or worked near the aforementioned facilities, Decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene and other toxic chemicals, which was emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water by Defendant Ameren.

4.      Defendant Ameren knew or should have known that benzene and other toxic chemicals had a toxic, poisonous, and highly deleterious effect upon the health of person inhaling, ingesting, or otherwise absorbing the benzene or other toxic chemicals, such as Decedent.

5.      At all relevant times, Defendant Ameren knew or should have known that:

    (a)    Benzene and benzene-containing pollutants are highly toxic;

    (b)    Benzene and benzene-containing pollutants should not be emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water;

    (c)    If benzene and benzene-containing pollutants are released into the environment, sufficient warnings must be provided, and effective remedial measures must be taken; and/or,

    (d)    They did not do anything substantial to stop, clean up or, in any way, remediate the Benzene Plume or pollution to stop its harmful effects it has had on Decedent and/or the surrounding community.

3

6.      Defendant Ameren had actual knowledge that such conduct posed a high probability of a known health risk to the people living and working, such as Decedent, in and around their facilities.

7.      Despite having this knowledge, Defendant Ameren negligently constructed, maintained, managed, and/or operated facilities and/or the associated refineries and pipelines, causing thousands of pounds of benzene and other benzene and other benzene-containing pollutants to be negligently and intentionally emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water. The release of benzene and other toxic chemicals from these facilities occurred throughout the time of their operations, causing the air and soil to be contaminated and creating a groundwater borne toxic plume of benzene-containing pollutants to extend beyond the boundaries of these aforementioned facilities and into the adjoining neighborhoods and communities.

8.      At all relevant times, Defendant Ameren had a duty to exercise reasonable care and caution for the safety, health, and welfare of Decedent and others living, working, and going to school in close proximity to the facilities and/or the associated refineries and pipelines where benzene and other toxic chemicals were being used, processed, stored, emitted, and/or transported.

9.      Defendant Ameren breached its duty and failed to exercise ordinary care in one or more of the following respects:

    (a)    Defendant Ameren included benzene in its products and processes, even though it was reasonably foreseeable that persons such as Decedent living, staying, and working in close proximity to the facilities and associated pipelines and facilities in and around the facilities would inhale, ingest, or otherwise absorb the carcinogen;

    (b)    Defendant Ameren included benzene in their products and processes at the facilities and associated pipelines and facilities while Defendant Ameren knew or should have known that the benzene would have a toxic, poisonous, and highly deleterious effect upon

4

the health of persons ingesting or otherwise absorbing the carcinogen;

(c)     Defendant Ameren included benzene in their products and processes when adequate substitutes for the carcinogen were available;

(d)     Defendant Ameren failed to sufficiently test, monitor, and research the human health effects on benzene and benzene-containing products or processes on residents living, working, or going to daycare or school in close proximity to where the benzene was being used when Defendant Ameren knew or should have known that benzene would have a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting, or otherwise absorbing the carcinogen;

(e)     Defendant Ameren failed to alert or warn Decedent and other persons living and/or working in close proximity to the facilities regarding the human health effects of benzene and benzene-containing products or processes, to determine and better understand the hazards to which such residents and students, such as Decedent, would be exposed while living, working, and going to school near said products and processes;

(f)     Defendant Ameren failed to alert or warn Decedent and other persons living and/or working in close proximity to the facilities of the likelihood of benzene contamination in the air, water, and/or ground/groundwater;

(g)     Defendant Ameren failed to alert or warn Decedent and other persons living and/or working in close proximity to the facilities concerning the dangers of inhaling, ingesting, or otherwise absorbing benzene or other toxic chemicals;

(h)     Defendant Ameren failed to recommend sufficient engineering controls or safeguards to reduce and/or eliminate benzene exposure to Decedent and other persons living, working, or going to daycare or school in close proximity to the facilities.

(i)     Defendant Ameren failed to recall and/or cease using benzene and benzene-containing products and processes which they had designed, manufactured, sold, distributed, or were using at the facilities and/or pipelines and/or refineries;

(j)     Defendant Ameren failed to take reasonable and prompt action to contain and/or clean up the benzene and benzene-containing pollutants that had been released into the environment;

5

(k)     Defendant Ameren failed to comply with state and federal regulations regarding the handling, storage, and/or removal of benzene and benzene-containing pollutants, including being cited numerous times for violating the Illinois and United States environmental protection laws for released of benzene and other dangerous chemicals;

(l)     Defendant Ameren knew or should have known about the presence of pollutants such as benzene that were released into the air and spilled, leaked, or dumped into the ground and discharged into the surface/ground water, and they failed to take necessary steps to prevent such carcinogenic pollutants from leaving the borders of their premises;

(m)    Defendant Ameren failed to properly maintain their benzene storage facilities, petroleum storage facilities, benzene pipelines, and petrochemical pipelines so as to prevent the leaking or release of benzene into the ground, groundwater, and air in and around the Facilities and/or pipelines and/or refinery;

(n)     Defendant Ameren failed to properly clean up or otherwise address any spills or leaks of benzene or petrochemicals and petroleum-containing benzene to prevent these substances from moving through the air, ground, and groundwater in and around the facilities and pipelines and refineries.

(o)     Defendant Ameren covered up and hid releases, leaks, and/or spills of benzene as well as the malfunction of equipment designed to prevent the release of such spills, leaks, and/or releases of benzene; and/or,

(p)     Defendant Ameren hid and covered up the relationship between benzene exposure and cancer, including the relationship between low level benzene exposure and cancer, and benzene exposure and the contraction of bladder cancer.

10.     While Defendant Ameren owned and/or operated facilities, and during the time decedent resided and/or worked near the facilities, decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene fumes emanating from benzene and certain benzene containing materials and products, which were processed, produced, emitted, manufactured, sold, distributed, marketed, and/or otherwise used by Ameren.

11.     As a direct and proximate result of the carelessness and negligence of Defendant

6

Ameren, decedent was caused to be exposed to, inhaled, ingested, and/or otherwise absorbed benzene and other toxic chemicals, thereby causing, or contributing to cause, decedent to develop bladder cancer.

12.      As a direct and proximate result of the unreasonably dangerous condition of the Defendant Ameren's benzene, materials, and/or products and other toxic chemicals, decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene and other toxic chemicals in sufficient amounts to cause disease, including the contraction of bladder cancer and/or other harms and to suffer damages therefrom including death which has also caused injuries to decedent's wrongful death beneficiaries.

WHEREFORE, Plaintiff, Marci Collins, Individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Defendant Ameren, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT 2 – SURVIVAL ACT (NEGLIGENCE) VS. DEFENDANT AMEREN

1.      Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.      As a direct and proximate result of Defendant Ameren's acts and omissions alleged above, Decedent was exposed to benzene, as alleged above, which caused Decedent to develop bladder cancer, experience conscious pain and suffering before his death, and resulted in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against

7

Defendant Ameren, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

<u>**COUNT 3 – R.J. REYNOLDS TOBACCO COMPANY**</u>

1.      Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.      In approximately 1974, Decedent smoked his first cigarette that was designed, manufactured, advertised, marketed, distributed, and/or sold by Defendant R.J. Reynolds Tobacco Company and (Tobacco Defendant) and Decedent continued to habitually smoke until approximately 1991, including primarily Salem Shorts.

3.      Prior to selling and/or distributing their cigarette products that Decedent purchased and smoked, Tobacco Defendant knew that exposure, inhalation, and ingestion of cigarette smoke was harmful to human beings and that it could cause injuries, including bladder cancer.

4.      Tobacco Defendant's cigarette products contained latent characteristics and/or latent functional defects at the time they were manufactured and at the time Decedent was exposed to them in that said product contained tar, nicotine, and other harmful substances that it knew or in the exercise of reasonable care, should have known would cause injuries to those who regularly used them.

5.      Tobacco Defendant was in the business of designing, manufacturing, advertising, marketing, distributing, and/or selling cigarette products during the times pertinent to this suit, and knew that Decedent and others similarly situated would encounter its cigarette products, and would be exposed to the inhalation of the smoke from said products and result in the development of fatal and life-threatening injuries including, but not limited to, bladder cancer.

6.      Tobacco Defendant were negligent in the following respects:

(a)     Prior to 1966 and after Decedent had already been exposed to and addicted to these its cigarette products, failing to warn of the addictive nature of its cigarette products and the adverse health effects from using such products and/or the potential to develop an addiction and suffer health effects from consistent exposure to cigarette smoke from its cigarette products as a bystander;

(b)     Designing, manufacturing, developing, selling, and marketing cigarette products that were milder, had better taste, and contained nicotine so that foreseeable users, such as Decedent, would find smoking its cigarette products pleasurable and in turn would lead Decedent, and others similarly situated, to begin smoking and/or to increase consumption;

(c)     Designing, manufacturing, selling, and marketing cigarette products as "light" or "filtered" that it knew were no safer, and were even more hazardous than other "regular" cigarettes;

(d)     Failing to disclose and/or warn that its "light" or "filtered" cigarettes would not be less hazardous as smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine, and other harmful substances would not be reduced;

(e)     Continuing to fraudulently market and sell multiple brands as "light" or "filtered" and causing smokers, such as Decedent, to wrongly believe that its "light" or "filtered" cigarettes reduce the harms of smoking;

(f)     Failing to develop and utilize alternative design, manufacturing methods, and/or materials to reduce and/or eliminate harmful materials and/or characteristics from the cigarette products it designed, manufactured, advertised, marketed, distributed, and/or sold;

(g)     Continuing to manufacture, distribute, and sell cigarette products when it knew at the time of said manufacture, distribution, and/or sale that such products could cause, and in fact were more likely to cause injuries, including cancer, to foreseeable users, such as Decedent, when used as intended;

(h)     Concealing information while affirmatively misrepresenting to Decedent and other members of the public through advertising, "informational" communications, sponsorship of sports activities, concerts, and other events, testimony and public statements by officers, agents, and employees of the cigarette manufacturers, by labels and otherwise, that its cigarette products manufactured, distributed and/or sold were safe and/or not proven to be dangerous

9

in their ordinary and foreseeable use, which material misrepresentations induced Decedent to unknowingly use and/or continue to use its cigarette products and expose himself to the hazards of developing disease and/or suffering injuries, including cancer;

(i)     Failing to test and/or adequately test its cigarette products before offering them for sale and use by Decedent, and other persons similarly situated;

(j)     Failing to remove and recall all said cigarette products from the stream of commerce and the marketplace upon ascertaining that said products would cause serious injuries, including cancer, which is permanent and fatal;

(k)     Manipulating, failing to reduce, and/or eliminating nicotine from its cigarette products to prevent Decedent, who was addicted to the nicotine in its cigarette products, from quitting and/or reducing consumption;

(l)     Including nicotine, or artificially high levels of nicotine, in its cigarette products to prevent Decedent, and other persons similarly situated, from quitting and/or reducing consumption;

(m)    Utilizing tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

(n)     Designing and manufacturing cigarettes to be inhalable and thus unreasonably dangerous; and/or,

(o)     Placing additives and ingredients in cigarettes to make them easier to inhale and unreasonably addictive.

7.      Tobacco Defendant's cigarette products that Decedent was exposed to were used by Decedent in the manner in which they were intended or reasonably foreseeable to Tobacco Defendants.

8.      Tobacco Defendant's cigarette products failed to perform as safely as Decedent expected it would in that they caused him to develop bladder cancer because of his exposure and inhalation of cigarette smoke from its cigarette products.

9.      Tobacco Defendant's cigarette products suffered from a manufacturing and design defect in that they contained arsenic, carcinogens, toxic chemicals, toxic gases, nicotine, tars, and other substances that it knew or should have known were extremely harmful in that exposure to such substances causes injuries and death, and for which there were available materials to substitute and/or manufacturing methods to reduce and/or eliminate these substances in the design and manufacture of the product.

10.     As a direct and proximate result of these Tobacco Defendant's negligent acts and/or omissions, Decedent developed bladder cancer and suffered damages therefrom including death which has also caused injuries to Decedent's wrongful death beneficiaries.

WHEREFORE, Plaintiff, Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT 4 – SURVIVAL ACT (NEGLIGENCE) VS. R.J. REYNOLDS TOBACCO COMPANY

1.      Plaintiff incorporates by reference Count 5 as if fully asserted herein.

2.      As a direct and proximate result of Tobaccos Defendant's acts and omissions alleged above, Decedent developed bladder cancer, experienced conscious pain and suffering before his death, and caused Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of

$50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

### COUNT 5 – WRONGFUL DEATH (STRICT LIABILITY: DESIGN DEFECT & FAILURE TO WARN) VS. R.J. REYNOLDS TOBACCO COMPANY

1.    Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.    Tobacco Defendant designed, manufactured, and sold its branded cigarette products and other tobaccos products to Decedent, which also contained menthol.

3.    The aforesaid cigarette products were distributed, supplied, sold, and/or otherwise placed into the stream of commerce, and/or caused to be placed into the stream of commerce, by Tobacco Defendant.

4.    Decedent purchased and was exposed to Tobacco Defendant's cigarette products over many years during which time smoke from Tobacco Defendants' cigarette products were breathed in and inhaled by Decedent, which caused or contributed to him developing bladder cancer.

5.    At the time Tobacco Defendant designed, manufactured, advertised, marketed, distributed, and/or sold the aforesaid cigarette products, such products were expected to, and did, reach Decedent in a condition without substantial change from that in which such products were when within the possession of Tobacco Defendant.

6.    Tobacco Defendant's cigarette products were in a condition unreasonably dangerous to users, like Decedent, and said products were expected to and did reach Decedent without substantial change affecting that condition.

7.    Tobacco Defendant's cigarette products were, by way of defective design and failures to warn of the health hazards of its "light" or "filtered" cigarette products, in a condition

unreasonably dangerous to users, like Decedent, and said products were expected to and did reach Decedent without substantial change affecting that condition.

8.    Tobacco Defendant's cigarette products were unreasonably dangerous due to their design, as described above, and its failures to warn of cancer and the health risks of use when Decedent first smoked its cigarettes products and subsequently became addicted.

9. Tobacco Defendant's cigarette products were dangerous beyond the expectation of the ordinary user or consumer when used as intended or in a manner reasonably foreseeable by Tobacco Defendants.

10.    Tobacco Defendant's cigarette products were unreasonably dangerous because a less dangerous design and/or modification was economically and scientifically feasible and because Defendant could have simply warned of the health hazards associated with its cigarette products.

11.    Tobacco Defendant's cigarette products were in an unreasonably dangerous and defective condition in that such products:

    (a)    Contained, by design, tar, nicotine, carcinogens, toxic gasses, and other substances deleterious, poisonous, and highly harmful to Decedent;

    (b)    Contained by design tar, nicotine, carcinogens, toxic gasses, and other substances deleterious, poisonous, and highly harmful when and after it became feasible to design and manufacture reasonably comparable products not containing those substances or containing less of them;

    (c)    Failed to filter the harmful substances so that during ordinary use, such materials would not be liberated into the air and/or breathed by the smoker such as Decedent;

    (d)    Through the use of filters, manufacturing methods, engineering methods, and/or the materials utilized were designed in such a way to make smoking its cigarette products more tasteful, pleasurable and less likely to trigger the smoker's own biological self-defense mechanism which otherwise may have limited and/or altered the

smoker's behavior in such a way that the smoker may have smoked less, inhaled less deeply or not at all;

(e)     Prior to 1966 and after Decedent had already been exposed to and addicted to its cigarette products for over  10 years, failing to warn of the addictive nature of its cigarette products and the adverse health effect from using such products and/or the potential to develop an addiction and suffer health effects from consistent exposure to cigarette smoke from its cigarette products as a bystander;

(f)     Designing, manufacturing, selling, and marketing cigarette products as "light" or "filtered" that it knew were no safer, and were even more hazardous than other "regular" cigarettes;

(g)     Failing to disclose and/or warn that its "light" or "filtered" cigarettes would not be less hazardous as smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine, and other harmful substances would not be reduced;

(h)     Continuing to fraudulently market and sell multiple brands as "light" or "filtered" and causing smokers, such as Decedent, to wrongly believe that its "light" or "filtered" cigarettes reduce the harms of smoking;

(i)     Utilized tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

(j)     The nature and degree of the danger of its cigarette products were beyond the expectation of the ordinary consumer when used as intended or in a reasonably foreseeable manner;

(k)     Designing and manufacturing their cigarettes to be inhalable and thus unreasonably dangerous; and/or,

(l)     Placing additives and ingredients in cigarettes to make them easier to inhale and addictive.

12.     Decedent, unaware of the defective and unreasonably dangerous condition of Tobacco Defendant's cigarette products prior to 1966, and at a time when such products were being used for the purposes for which they were intended, was exposed to and breathed in smoke

14

from Tobacco Defendant's cigarette products.

13.     Tobacco Defendant knew that its cigarette products would be used without inspection for defects, and by placing them on the market represented that they would be safe.

14.     As a direct and proximate result of the foregoing acts or omissions on the part of Tobacco Defendant and the unreasonably dangerous condition of its cigarette products, by way of design defect and failures to warn, Tobacco Defendant is strictly liable to Decedent for his injuries therefrom, including Decedent's development of bladder cancer, his death, and the injuries to Decedent's wrongful death beneficiaries.

WHEREFORE, Plaintiff Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT 6 – SURVIVAL ACT
## (STRICT LIABILITY: FAILURE TO WARN & DESIGN DEFECT)
## VS. R.J. REYNOLDS TOBACCO COMPANY

1.     Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.     As a direct and proximate result of Tobaccos Defendant's acts and omissions alleged above, Decedent developed bladder cancer, experienced conscious pain and suffering before his death, and caused Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of

$50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

Respectfully Submitted,

**GIANARIS TRIAL LAWYERS**

Attorney for Plaintiff

/s/ Dirk Hennessey _____
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
Suvir Dhar, IL #6304709
Dirk Hennessey, IL #6311069
One Design Mesa
Collinsville, IL 62234
618-816-9999
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
sdhar@lawforpeople.com
dirk@lawforpeople.com
**ATTORNEYS FOR PLAINTIFF**

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois courts.
Forms are free at ilcourts.info/forms.

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | *For Court Use Only* |
|---|---|---|
| St. Clair _____ COUNTY | | |

**Instructions ▼**

| Enter above the county name where the case was filed. | MARCI COLLINS, Individually and as Special Admin. |  |
|---|---|---|
| | **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | v. | |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | **Defendants / Respondents** *(First, middle, last name)* | |
| | AMEREN ILLINOIS COMPANY, Et. AL. | 2025LA001167 |
| | | **Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

# IMPORTANT: You have been sued.

- Read all documents attached to this *Summons*.

- You MUST file an official document with the court within the time stated on this *Summons* called an *Appearance* and a document called an *Answer/Response*. If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees*.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

---

**Plaintiff/Petitioner:**

**Do not use this form** in these types of cases:

- All criminal cases
- Detinue
- Order of protection
- Divorce
- Administrative review cases
- Eviction
- Stalking no contact orders
- Paternity
- Adult guardianship
- Foreclosure
- Civil no contact orders
- Small Claims

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

**1. Defendant/Respondent's address and service information:**

In **1a**, enter the name and address of the first Defendant/Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here.

   a.  Defendant/Respondent's primary address/information for service:

     Name *(First, Middle, Last)*:  AMEREN ILLINOIS COMPANY

     Registered Agent's name, if any:  THE CORPORATION COMPANY

     Street Address, Unit #:  600 S 2ND ST STE 104

     City, State, ZIP:  SPRINGFIELD, IL, Sangamon, 62704-2550

     Telephone:      Email:

In **1b**, enter a second address for the first Defendant/Respondent, if you have one.

   b.  If you have more than one address where Defendant/Respondent might be found, list that here:

     Name *(First, Middle, Last)*:

     Street Address, Unit #:

     City, State, ZIP:

     Telephone:      Email:

In **1c**, check how you are sending your documents to this Defendant/Respondent.

   c.  Method of service on Defendant/Respondent:

     ☐ Sheriff    ☐ Sheriff outside Illinois:

                             *County & State*

     ☐ Special process server    ☐ Licensed private detective

Check here if you are serving more than 1 Defendant/Respondent. Attach an *Additional Defendant/Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached.

☐ **I am serving more than 1 Defendant/Respondent.**

I have attached _____ *Additional Defendant/Respondent Address*

               *Number*

*and Service Information* forms.

**2. Information about the lawsuit:**

   a.  Amount claimed:  $

   b.  ☐ I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession).

In **2a**, enter the amount of money owed to you. Check **2b** if you are asking for the return of tangible personal property.

**3. Contact information for the Plaintiff/Petitioner:**

In **3**, enter your complete address, telephone number, and email address, if you have one.

   Name *(First, Middle, Last)*: Gianaris Trial Lawyers LLC

   Street Address, Unit #:  1 Design Mesa

   City, State, ZIP:  Collinsville, IL 62234

   Telephone:  (618) 681-9999    Email:  sdhar@lawforpeople.com

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms. |
| --- | --- |

Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**.

**4. Instructions for person receiving this *Summons* (Defendant):**

  ☒  a.  To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:

       Address:  10 PUBLIC SQUARE

       City, State, ZIP:  BELLEVILLE, IL 62232

<table>
<tr><td>In **4a,** fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.*</td><td></td></tr>
</table>

☐ b.  **Attend court:**

On: _____ at _____ ☐ a.m. ☐ p.m. in _____
        *Date*              *Time*                       *Courtroom*

**In-person at:**

_____
*Courthouse Address*       *City*                   *State*       *ZIP*

OR

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance")**:**

      By telephone: _____
                            *Call-in number for telephone remote appearance*

      By video conference: _____
                                 *Video conference website*

      _____
      *Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk _____ or visit their website
                          *Circuit Clerk's phone number*

at: _____ to find out more about how to do this.
   *Website*

<table>
<tr><td>In **4b,** fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website.<br><br>All of this information is available from the Circuit Clerk.</td></tr>
</table>

<table>
<tr><td>**STOP!**<br>The Circuit Clerk will fill in this section.</td></tr>
</table>

**Witness this Date:**

**Clerk of the Court:** 10/21/2025
                     Nora McDaniel

*Seal of Court*

KINNIS WILLIAMS, SR, Circuit Clerk

---

**STOP! The officer or process server will fill in the Date of Service**

**Note to officer or process server:**
- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 21 days before the court date, unless 2b is also checked.
  - If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

Date of Service: _____
                       *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
**Forms are free at ilcourts.info/forms.**

| | | |
|---|---|---|
| **STATE OF ILLINOIS,**<br>**CIRCUIT COURT**<br><br>St. Clair _____ **COUNTY** | **PROOF OF SERVICE OF**<br>**SUMMONS AND**<br>**COMPLAINT/PETITION** | *For Court Use Only* |

| | |
|---|---|
| **Instructions** | |
| Enter above the county name where the case was filed. | MARCI COLLINS, Individually and as Special Admin.<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/Respondents. | v.<br><br>AMEREN ILLINOIS COMPANY, Et. AL.<br>**Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

2025LA001167
**Case Number**

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.\*\***

**My name is** _____ **and I state**
*First, Middle, Last*

☐ **I served the** *Summons* **and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

☐ Personally on the Defendant/Respondent:

☐ Male   ☐ Female   ☐ Non-Binary   Approx. Age: _____   Race: _____

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

And left it with: _____
*First, Middle, Last*

☐ Male   ☐ Female   ☐ Non-Binary   Approx. Age: _____   Race: _____

and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on this date: _____ .

☐ On the Corporation's agent, _____
*First, Middle, Last*

☐ Male   ☐ Female   ☐ Non-Binary   Approx. Age: _____   Race: _____

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address: _____

City, State, ZIP: _____

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
      Address: _____
      City, State, ZIP: _____
      Other information about service attempt: _____
      _____
      _____
      _____

2.    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
      Address: _____
      City, State, ZIP: _____
      Other information about service attempt: _____
      _____
      _____
      _____

3.    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
      Address: _____
      City, State, ZIP: _____
      Other information about service attempt: _____
      _____
      _____
      _____

| |
|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. |

**If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.**

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**By:** _____

*Signature by:*  ☐ Sheriff
                ☐ Sheriff outside Illinois:

                _____
                *County and State*
                ☐ Special process server
                ☐ Licensed private detective

_____
*Print Name*

**FEES**
Service and Return:    $ _____
Miles _____       $ _____
Total                  $ _____

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

| Print Form | | Save Form | | Reset Form |
|---|---|---|---|---|

This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.
**Forms are free at ilcourts.info/forms.**

| STATE OF ILLINOIS, CIRCUIT COURT | **SUMMONS** | For Court Use Only |
|---|---|---|
| St. Clair _____ COUNTY | | |

| **Instructions ▼** | | |
|---|---|---|
| Enter above the county name where the case was filed. | MARCI COLLINS, Individually and as Special Admin. **Plaintiff / Petitioner** (First, middle, last name) | |
| Enter your name as Plaintiff/Petitioner. | v. | |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | **Defendants / Respondents** (First, middle, last name) AMEREN ILLINOIS COMPANY, Et. AL. | 2025LA001167 **Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** (Check this box if this is not the 1st Summons issued for this Defendant.) | |

## IMPORTANT: You have been sued.

- Read all documents attached to this *Summons*.

- You MUST file an official document with the court within the time stated on this *Summons* called an *Appearance* and a document called an *Answer/Response*. If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees*.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

### Plaintiff/Petitioner:

**Do not use this form** in these types of cases:

- All criminal cases
- Detinue
- Order of protection
- Divorce
- Administrative review cases
- Eviction
- Stalking no contact orders
- Paternity
- Adult guardianship
- Foreclosure
- Civil no contact orders
- Small Claims

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent,** attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk: 2025LA001167

| | | |
|---|---|---|
| In **1a**, enter the name and address of the first Defendant/Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** | **Defendant/Respondent's address and service information:** |

**1.  Defendant/Respondent's address and service information:**

a.  Defendant/Respondent's primary address/information for service:

Name *(First, Middle, Last)*:  R.J. REYNOLDS TOBACCO COMPANY

Registered Agent's name, if any:  ILLINOIS CORPORATION SERVICE COMPANY

Street Address, Unit #:  801 ADLAI STEVENSON DRIVE

City, State, ZIP:  SPRINGFIELD, IL, Sangamon, 62703-4261

Telephone: _____  Email: _____

In **1b**, enter a second address for the first Defendant/Respondent, if you have one.

b.  If you have more than one address where Defendant/Respondent might be found, list that here:

Name *(First, Middle, Last)*: _____

Street Address, Unit #: _____

City, State, ZIP: _____

Telephone: _____  Email: _____

In **1c**, check how you are sending your documents to this Defendant/Respondent.

c.  Method of service on Defendant/Respondent:

☐ Sheriff    ☐ Sheriff outside Illinois: _____
*County & State*

☐ Special process server    ☐ Licensed private detective

Check here if you are serving more than 1 Defendant/Respondent. Attach an *Additional Defendant/Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached.

☐ **I am serving more than 1 Defendant/Respondent.**

I have attached _____ *Additional Defendant/Respondent Address*
*Number*
and *Service Information* forms.

In **2a**, enter the amount of money owed to you. Check **2b** if you are asking for the return of tangible personal property.

**2.  Information about the lawsuit:**

a.  Amount claimed:    $ _____

☐ b.  I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession).

In **3**, enter your complete address, telephone number, and email address, if you have one.

**3.  Contact information for the Plaintiff/Petitioner:**

Name *(First, Middle, Last)*: Gianaris Trial Lawyers LLC

Street Address, Unit #:  1 Design Mesa

City, State, ZIP:  Collinsville, IL 62234

Telephone:  (618) 681-9999    Email:  sdhar@lawforpeople.com

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

**Important information for the person getting this form**

You have been sued. Read all of the documents attached to this *Summons*.
To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms.

Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**.

**4.  Instructions for person receiving this *Summons* (Defendant):**

☒ a.  To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:

Address:  10 PUBLIC SQUARE

City, State, ZIP:  BELLEVILLE, IL 62232

NOV 1 3 2025

In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.*

In **4b**, fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website.

All of this information is available from the Circuit Clerk.

☐ b.  **Attend court:**

On: _____ at _____ ☐ a.m. ☐ p.m. in _____
      *Date*            *Time*                      *Courtroom*

**In-person at:**

_____
*Courthouse Address*      *City*               *State*      *ZIP*

OR

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

By telephone: _____
                       *Call-in number for telephone remote appearance*

By video conference: _____
                            *Video conference website*

_____
*Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk _____ or visit their website
                           *Circuit Clerk's phone number*

at: _____ to find out more about how to do this.
    *Website*

| **STOP!** The Circuit Clerk will fill in this section. | **Witness this Date:** _____ |
| --- | --- |

**Clerk of the Court:** 10/21/2025
Nora McDaniel

*Seal of Court*

KINNIS WILLIAMS, SR, Circuit Clerk

---

**STOP! The officer or process server will fill in the Date of Service**

**Note to officer or process server:**
- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 21 days before the court date, unless 2b is also checked.
  - If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

Date of Service: _____
                 *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

Enter the Case Number given by the Circuit Clerk: 2025LA001167

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
**Forms are free at ilcourts.info/forms.**

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>St. Clair_____ COUNTY | **PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION** | For Court Use Only |
|---|---|---|

| **Instructions** | | |
|---|---|---|
| Enter above the county name where the case was filed. | MARCI COLLINS, Individually and as Special Admin.<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>AMEREN ILLINOIS COMPANY, Et. AL.<br>**Defendant / Respondent** *(First, middle, last name)* | 2025LA001167<br>_____<br>**Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.\*\***

My name is _____ and I state
_____*First, Middle, Last*

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent
_____ as follows:
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:
        ☐ Male ☐ Female ☐ Non-Binary    Approx. Age: _____ Race: _____
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address, Unit#: _____
        City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address, Unit#: _____
        City, State, ZIP: _____
        And left it with: _____
                *First, Middle, Last*
        ☐ Male ☐ Female ☐ Non-Binary    Approx. Age: _____ Race: _____
        and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on this date: _____ .

    ☐ On the Corporation's agent, _____
                       *First, Middle, Last*
        ☐ Male ☐ Female ☐ Non-Binary    Approx. Age: _____ Race: _____
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address: _____
        City, State, ZIP: _____

☐ **I was not able to serve the** *Summons* **and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____
    _____

2.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____
    _____

3.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____
    _____

| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |
|---|---|

**By:** _____

| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. | *Signature by:*  ☐ Sheriff<br>☐ Sheriff outside Illinois:<br>_____<br>*County and State*<br>☐ Special process server<br>☐ Licensed private detective |
|---|---|

**FEES**
Service and Return: $ _____
Miles _____ $ _____
Total $ _____

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

[ **Print Form** ]    [ **Save Form** ]    [ **Reset Form** ]

This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.
Forms are free at ilcourts.info/forms.

| STATE OF ILLINOIS, CIRCUIT COURT | **SUMMONS** | For Court Use Only |
|---|---|---|
| St. Clair _____ COUNTY | | |

| **Instructions ▼** | | |
|---|---|---|
| Enter above the county name where the case was filed. | MARCI COLLINS, Individually and as Special Admin. _____ <br> **Plaintiff / Petitioner** (First, middle, last name) | |
| Enter your name as Plaintiff/Petitioner. | v. | |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | **Defendants / Respondents** (First, middle, last name) <br> AMEREN ILLINOIS COMPANY, Et. AL. _____ | 2025LA001167 _____ <br> **Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** (Check this box if this is not the 1st Summons issued for this Defendant.) | |

## IMPORTANT: You have been sued.

- Read all documents attached to this *Summons*.

- You MUST file an official document with the court within the time stated on this *Summons* called an *Appearance* and a document called an *Answer/Response*. If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees*.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

### Plaintiff/Petitioner:

**Do not use this form** in these types of cases:

- All criminal cases
- Detinue
- Order of protection
- Divorce
- Administrative review cases
- Eviction
- Stalking no contact orders
- Paternity
- Adult guardianship
- Foreclosure
- Civil no contact orders
- Small Claims

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk: 2025LA001167

| | | |
|---|---|---|
| In **1a**, enter the name and address of the first Defendant/ Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** | **Defendant/Respondent's address and service information:** |

a. Defendant/Respondent's primary address/information for service:
Name *(First, Middle, Last)*:  R.J. REYNOLDS TOBACCO COMPANY
Registered Agent's name, if any:  ILLINOIS CORPORATION SERVICE COMPANY
Street Address, Unit #:  801 ADLAI STEVENSON DRIVE
City, State, ZIP:  SPRINGFIELD, IL, Sangamon, 62703-4261
Telephone: _____  Email: _____

| | |
|---|---|
| In **1b**, enter a second address for the first Defendant/ Respondent, if you have one. | b. If you have more than one address where Defendant/Respondent might be found, list that here:<br>Name *(First, Middle, Last)*: _____<br>Street Address, Unit #: _____<br>City, State, ZIP: _____<br>Telephone: _____  Email: _____ |
| In **1c**, check how you are sending your documents to this Defendant/ Respondent. | c. Method of service on Defendant/Respondent:<br>☐ Sheriff    ☐ Sheriff outside Illinois: _____<br>                                           *County & State*<br>☐ Special process server    ☐ Licensed private detective |

| | | |
|---|---|---|
| Check here if you are serving more than 1 Defendant/ Respondent. Attach an *Additional Defendant/ Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached. | ☐ | **I am serving more than 1 Defendant/Respondent.**<br>I have attached _____ *Additional Defendant/Respondent Address*<br>                            *Number*<br>*and Service Information* forms. |

| | | |
|---|---|---|
| In **2a**, enter the amount of money owed to you. Check **2b** if you are asking for the return of tangible personal property. | **2.** | **Information about the lawsuit:**<br>a. Amount claimed:    $ _____<br>☐ b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession). |

| | | |
|---|---|---|
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3.** | **Contact information for the Plaintiff/Petitioner:**<br>Name *(First, Middle, Last)*: Gianaris Trial Lawyers LLC<br>Street Address, Unit #:  1 Design Mesa<br>City, State, ZIP:  Collinsville, IL 62234<br>Telephone:  (618) 681-9999    Email:  sdhar@lawforpeople.com |

| | |
|---|---|
| | **GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties. |

| | |
|---|---|
| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms. |

| | | |
|---|---|---|
| Check **4a** or **4b**. If Defendant/ Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** | **Instructions for person receiving this *Summons* (Defendant):**<br>☒ a. To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:<br>Address:  10 PUBLIC SQUARE<br>City, State, ZIP: BELLEVILLE, IL 62232 |

NOV 1 3 2025

<table>
<tr><td>

In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.*

In **4b**, fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website.

All of this information is available from the Circuit Clerk.

</td><td>

☐ b.  **Attend court:**

On: _____ at _____ ☐ a.m. ☐ p.m. in _____
     *Date*          *Time*                *Courtroom*

**In-person at:**

_____
*Courthouse Address*    *City*            *State*    *ZIP*

OR

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

By telephone: _____
                *Call-in number for telephone remote appearance*

By video conference: _____
                    *Video conference website*

_____
*Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk _____ or visit their website
                   *Circuit Clerk's phone number*

at: _____ to find out more about how to do this.
   *Website*

</td></tr>
</table>

<table>
<tr><td>

**STOP!**

The Circuit Clerk will fill in this section.

</td><td>

**Witness this Date:** _____

**Clerk of the Court:** 10/21/2025
                 Nora McDaniel

</td><td>

*Seal of Court*

KINNIS WILLIAMS, SR., Circuit Clerk

</td></tr>
</table>

**STOP! The officer or process server will fill in the Date of Service**

**Note to officer or process server:**
- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 21 days before the court date, unless 2b is also checked.
  - If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

Date of Service: _____
                     *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

Enter the Case Number given by the Circuit Clerk: 2025LA001167

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
**Forms are free at ilcourts.info/forms.**

| STATE OF ILLINOIS, CIRCUIT COURT | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|
| St. Clair_____ COUNTY | | |

| **Instructions** | |
|---|---|
| Enter above the county name where the case was filed. | MARCI COLLINS, Individually and as Special Admin.<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>AMEREN ILLINOIS COMPANY, Et. AL.<br>**Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

For Court Use Only

2025LA001167
**Case Number**

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.\*\***

**My name is** _____ **and I state**
             *First, Middle, Last*

☐ **I served the *Summons*** and Complaint/Petition on the Defendant/Respondent

_____ **as follows:**
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:
        ☐ Male  ☐ Female  ☐ Non-Binary  Approx. Age: _____ Race: _____
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address, Unit#: _____
        City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address, Unit#: _____
        City, State, ZIP: _____
        And left it with: _____
                *First, Middle, Last*
        ☐ Male  ☐ Female  ☐ Non-Binary  Approx. Age: _____ Race: _____
        and by sending a copy to this defendant in a postage-paid, sealed envelope to the
        above address on this date: _____ .

    ☐ On the Corporation's agent, _____
                     *First, Middle, Last*
        ☐ Male  ☐ Female  ☐ Non-Binary  Approx. Age: _____ Race: _____
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address: _____
        City, State, ZIP: _____

☐ **I was not able to serve the** *Summons* **and Complaint/Petition on Defendant/Respondent:**

_____

*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

**By:** _____

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

*Signature by:*   ☐ Sheriff
                  ☐ Sheriff outside Illinois:
                  _____
                  *County and State*
                  ☐ Special process server
                  ☐ Licensed private detective

_____
*Print Name*

**FEES**

Service and Return:   $ _____
Miles _____       $ _____
Total                 $ _____

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

| | | |
|---|---|---|
| **Print Form** | **Save Form** | **Reset Form** |

Electronically Filed
Kinnis Williams, Sr.
Circuit Clerk
Janice Mendiola
2025LA001167
St. Clair County
10/17/2025 9:46 AM
34934541

## IN THE CIRCUIT COURT OF
## THE JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

MARCI COLLINS, Individually and as Special )
Administrator for the Estate of )
MICHAEL COLLINS, )
                )
        Plaintiff, )
                )     Case No.: **2025LA001167**
      vs. )
                )
AMEREN ILLINOIS COMPANY, )
R.J. REYNOLDS TOBACCO COMPANY, )
                )
        Defendants. )

## COMPLAINT

Plaintiff, Marci Collins, Individually and as Special Administrator for the Estate of Michael

Collins ("Decedent"), through Ted N. Gianaris, Joshua Edelson, Suvir Dhar, and Dirk Hennessey

of Gianaris Trial Lawyers, LLC, states and alleges as follows for the Complaint against the

Defendants named herein:

## FACTS COMMON TO ALL COUNTS

1.     Decedent, Michael Collins, was a resident of Jerseyville, Jersey County, Illinois

and resided at 26911 Robin Lane, Jerseyville, Jersey County, Illinois 62052 until his death in 2024.

2.     Defendant, Ameren Illinois Company ("Ameren"), is a corporation organized and

existing under the laws of Illinois that is authorized to do business in Illinois, which maintains a

registered office for service of process in Sangamon County, Illinois and that has, at all times

relevant herein, conducted business in St. Clair County, Illinois at or near St. Clair, St. Clair

County, Illinois.

3.     Defendant, R.J. Reynolds Tobacco Company ("RJR") is a corporation organized

and existing under the laws of North Carolina that is authorized to do business in Illinois, which

1

maintains a registered office for service of process in Sangamon County, Illinois and that has, at all times relevant herein, conducted business in St. Clair County, Illinois at or near St. Clair, St. Clair County, Illinois.

4.    The foregoing defendants, as set forth in paragraphs 2 through 3, will be collectively referred to as "Defendants" throughout this Complaint and are jointly and severally liable in that they caused or contributed to Decedent's cancer and injuries.

5.    Decedent was born on July 23, 1958, and lived in Illinois nearly his whole life.

6.    From 1978 to 2008 Decedent was a member of the union Plumbers and Pipefitters Local 553 and he worked at various locations within Illinois, where he was exposed to benzene and other toxic chemicals.

7.    Decedent worked at an Ameren facility where he did the same pipefitting work and was exposed to benzene and VOCs while doing said work.

8.    Decedent was diagnosed with bladder cancer on October 20, 2023.

9.    Specifically, decedent was diagnosed with: Bladder, right lateral wall and bladder neck, TURBT: invasive high-grade papillary urothelial carcinoma.

10.    Decedent developed Stage 3 bladder cancer.

11.    As a direct and proximate result of said bladder cancer, Decedent died on April 18, 2024.

12.    This Court has subject matter jurisdiction over this cause, as there is no complete diversity, and personal jurisdiction over all defendants in the State of Illinois as Decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene and benzene-containing products within St. Clair County, Illinois.

13.    Venue is proper in this court under 735 ILCS § 5/2-101(1-2) because St. Clair County, Illinois is the county in which the actions or omissions occurred and out of which the Decedent's cause of action arose.

2

## COUNT 1 – WRONGFUL DEATH (NEGLIGENCE)
## VS. DEFENDANT AMEREN

1.　　Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.　　While Defendant Ameren owned and/or operated the facilities and/or the associated refineries/pipelines, and during the times Decedent resided, stayed, worked, and/or spent time near these facilities, thousands of pounds of benzene, other benzene-containing pollutants, and other contaminants were emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water.

3.　　While Decedent resided, stayed, spent time, and/or worked near the aforementioned facilities, Decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene and other toxic chemicals, which was emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water by Defendant Ameren.

4.　　Defendant Ameren knew or should have known that benzene and other toxic chemicals had a toxic, poisonous, and highly deleterious effect upon the health of person inhaling, ingesting, or otherwise absorbing the benzene or other toxic chemicals, such as Decedent.

5.　　At all relevant times, Defendant Ameren knew or should have known that:

　　(a)　　Benzene and benzene-containing pollutants are highly toxic;

　　(b)　　Benzene and benzene-containing pollutants should not be emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water;

　　(c)　　If benzene and benzene-containing pollutants are released into the environment, sufficient warnings must be provided, and effective remedial measures must be taken; and/or

　　(d)　　They did not do anything substantial to stop, clean up or, in any way, remediate the Benzene Plume or pollution to stop its harmful effects it has had on Decedent and/or the surrounding community.

3

6.      Defendant Ameren had actual knowledge that such conduct posed a high probability of a known health risk to the people living and working, such as Decedent, in and around their facilities.

7.      Despite having this knowledge, Defendant Ameren negligently constructed, maintained, managed, and/or operated facilities and/or the associated refineries and pipelines, causing thousands of pounds of benzene and other benzene and other benzene-containing pollutants to be negligently and intentionally emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water. The release of benzene and other toxic chemicals from these facilities occurred throughout the time of their operations, causing the air and soil to be contaminated and creating a groundwater borne toxic plume of benzene-containing pollutants to extend beyond the boundaries of these aforementioned facilities and into the adjoining neighborhoods and communities.

8.      At all relevant times, Defendant Ameren had a duty to exercise reasonable care and caution for the safety, health, and welfare of Decedent and others living, working, and going to school in close proximity to the facilities and/or the associated refineries and pipelines where benzene and other toxic chemicals were being used, processed, stored, emitted, and/or transported.

9.      Defendant Ameren breached its duty and failed to exercise ordinary care in one or more of the following respects:

     (a)    Defendant Ameren included benzene in its products and processes, even though it was reasonably foreseeable that persons such as Decedent living, staying, and working in close proximity to the facilities and associated pipelines and facilities in and around the facilities would inhale, ingest, or otherwise absorb the carcinogen;

     (b)    Defendant Ameren included benzene in their products and processes at the facilities and associated pipelines and facilities while Defendant Ameren knew or should have known that the benzene would have a toxic, poisonous, and highly deleterious effect upon

4

the health of persons ingesting or otherwise absorbing the carcinogen;

(c)  Defendant Ameren included benzene in their products and processes when adequate substitutes for the carcinogen were available;

(d)  Defendant Ameren failed to sufficiently test, monitor, and research the human health effects on benzene and benzene-containing products or processes on residents living, working, or going to daycare or school in close proximity to where the benzene was being used when Defendant Ameren knew or should have known that benzene would have a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting, or otherwise absorbing the carcinogen;

(e)  Defendant Ameren failed to alert or warn Decedent and other persons living and/or working in close proximity to the facilities regarding the human health effects of benzene and benzene-containing products or processes, to determine and better understand the hazards to which such residents and students, such as Decedent, would be exposed while living, working, and going to school near said products and processes;

(f)  Defendant Ameren failed to alert or warn Decedent and other persons living and/or working in close proximity to the facilities of the likelihood of benzene contamination in the air, water, and/or ground/groundwater;

(g)  Defendant Ameren failed to alert or warn Decedent and other persons living and/or working in close proximity to the facilities concerning the dangers of inhaling, ingesting, or otherwise absorbing benzene or other toxic chemicals;

(h)  Defendant Ameren failed to recommend sufficient engineering controls or safeguards to reduce and/or eliminate benzene exposure to Decedent and other persons living, working, or going to daycare or school in close proximity to the facilities.

(i)  Defendant Ameren failed to recall and/or cease using benzene and benzene-containing products and processes which they had designed, manufactured, sold, distributed, or were using at the facilities and/or pipelines and/or refineries;

(j)  Defendant Ameren failed to take reasonable and prompt action to contain and/or clean up the benzene and benzene-containing pollutants that had been released into the environment;

5

(k)   Defendant Ameren failed to comply with state and federal regulations regarding the handling, storage, and/or removal of benzene and benzene-containing pollutants, including being cited numerous times for violating the Illinois and United States environmental protection laws for released of benzene and other dangerous chemicals;

(l)   Defendant Ameren knew or should have known about the presence of pollutants such as benzene that were released into the air and spilled, leaked, or dumped into the ground and discharged into the surface/ground water, and they failed to take necessary steps to prevent such carcinogenic pollutants from leaving the borders of their premises;

(m)   Defendant Ameren failed to properly maintain their benzene storage facilities, petroleum storage facilities, benzene pipelines, and petrochemical pipelines so as to prevent the leaking or release of benzene into the ground, groundwater, and air in and around the Facilities and/or pipelines and/or refinery;

(n)   Defendant Ameren failed to properly clean up or otherwise address any spills or leaks of benzene or petrochemicals and petroleum-containing benzene to prevent these substances from moving through the air, ground, and groundwater in and around the facilities and pipelines and refineries.

(o)   Defendant Ameren covered up and hid releases, leaks, and/or spills of benzene as well as the malfunction of equipment designed to prevent the release of such spills, leaks, and/or releases of benzene; and/or,

(p)   Defendant Ameren hid and covered up the relationship between benzene exposure and cancer, including the relationship between low level benzene exposure and cancer, and benzene exposure and the contraction of bladder cancer.

10.   While Defendant Ameren owned and/or operated facilities, and during the time decedent resided and/or worked near the facilities, decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene fumes emanating from benzene and certain benzene containing materials and products, which were processed, produced, emitted, manufactured, sold, distributed, marketed, and/or otherwise used by Ameren.

11.   As a direct and proximate result of the carelessness and negligence of Defendant

6

Ameren, decedent was caused to be exposed to, inhaled, ingested, and/or otherwise absorbed benzene and other toxic chemicals, thereby causing, or contributing to cause, decedent to develop bladder cancer.

12.    As a direct and proximate result of the unreasonably dangerous condition of the Defendant Ameren's benzene, materials, and/or products and other toxic chemicals, decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene and other toxic chemicals in sufficient amounts to cause disease, including the contraction of bladder cancer and/or other harms and to suffer damages therefrom including death which has also caused injuries to decedent's wrongful death beneficiaries.

WHEREFORE, Plaintiff, Marci Collins, Individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Defendant Ameren, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT 2 – SURVIVAL ACT (NEGLIGENCE)
## VS. DEFENDANT AMEREN

1.    Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.    As a direct and proximate result of Defendant Ameren's acts and omissions alleged above, Decedent was exposed to benzene, as alleged above, which caused Decedent to develop bladder cancer, experience conscious pain and suffering before his death, and resulted in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against

7

Defendant Ameren, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT 3 – R.J. REYNOLDS TOBACCO COMPANY

1.    Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.    In approximately 1974, Decedent smoked his first cigarette that was designed, manufactured, advertised, marketed, distributed, and/or sold by Defendant R.J. Reynolds Tobacco Company and (Tobacco Defendant) and Decedent continued to habitually smoke until approximately 1991, including primarily Salem Shorts.

3.    Prior to selling and/or distributing their cigarette products that Decedent purchased and smoked, Tobacco Defendant knew that exposure, inhalation, and ingestion of cigarette smoke was harmful to human beings and that it could cause injuries, including bladder cancer.

4.    Tobacco Defendant's cigarette products contained latent characteristics and/or latent functional defects at the time they were manufactured and at the time Decedent was exposed to them in that said product contained tar, nicotine, and other harmful substances that it knew or in the exercise of reasonable care, should have known would cause injuries to those who regularly used them.

5.    Tobacco Defendant was in the business of designing, manufacturing, advertising, marketing, distributing, and/or selling cigarette products during the times pertinent to this suit, and knew that Decedent and others similarly situated would encounter its cigarette products, and would be exposed to the inhalation of the smoke from said products and result in the development of fatal and life-threatening injuries including, but not limited to, bladder cancer.

6.    Tobacco Defendant were negligent in the following respects:

8

(a)     Prior to 1966 and after Decedent had already been exposed to and addicted to these its cigarette products, failing to warn of the addictive nature of its cigarette products and the adverse health effects from using such products and/or the potential to develop an addiction and suffer health effects from consistent exposure to cigarette smoke from its cigarette products as a bystander;

(b)     Designing, manufacturing, developing, selling, and marketing cigarette products that were milder, had better taste, and contained nicotine so that foreseeable users, such as Decedent, would find smoking its cigarette products pleasurable and in turn would lead Decedent, and others similarly situated, to begin smoking and/or to increase consumption;

(c)     Designing, manufacturing, selling, and marketing cigarette products as "light" or "filtered" that it knew were no safer, and were even more hazardous than other "regular" cigarettes;

(d)     Failing to disclose and/or warn that its "light" or "filtered" cigarettes would not be less hazardous as smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine, and other harmful substances would not be reduced;

(e)     Continuing to fraudulently market and sell multiple brands as "light" or "filtered" and causing smokers, such as Decedent, to wrongly believe that its "light" or "filtered" cigarettes reduce the harms of smoking;

(f)     Failing to develop and utilize alternative design, manufacturing methods, and/or materials to reduce and/or eliminate harmful materials and/or characteristics from the cigarette products it designed, manufactured, advertised, marketed, distributed, and/or sold;

(g)     Continuing to manufacture, distribute, and sell cigarette products when it knew at the time of said manufacture, distribution, and/or sale that such products could cause, and in fact were more likely to cause injuries, including cancer, to foreseeable users, such as Decedent, when used as intended;

(h)     Concealing information while affirmatively misrepresenting to Decedent and other members of the public through advertising, "informational" communications, sponsorship of sports activities, concerts, and other events, testimony and public statements by officers, agents, and employees of the cigarette manufacturers, by labels and otherwise, that its cigarette products manufactured, distributed and/or sold were safe and/or not proven to be dangerous

9

in their ordinary and foreseeable use, which material misrepresentations induced Decedent to unknowingly use and/or continue to use its cigarette products and expose himself to the hazards of developing disease and/or suffering injuries, including cancer;

(i)    Failing to test and/or adequately test its cigarette products before offering them for sale and use by Decedent, and other persons similarly situated;

(j)    Failing to remove and recall all said cigarette products from the stream of commerce and the marketplace upon ascertaining that said products would cause serious injuries, including cancer, which is permanent and fatal;

(k)    Manipulating, failing to reduce, and/or eliminating nicotine from its cigarette products to prevent Decedent, who was addicted to the nicotine in its cigarette products, from quitting and/or reducing consumption;

(l)    Including nicotine, or artificially high levels of nicotine, in its cigarette products to prevent Decedent, and other persons similarly situated, from quitting and/or reducing consumption;

(m)    Utilizing tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

(n)    Designing and manufacturing cigarettes to be inhalable and thus unreasonably dangerous; and/or,

(o)    Placing additives and ingredients in cigarettes to make them easier to inhale and unreasonably addictive.

7.    Tobacco Defendant's cigarette products that Decedent was exposed to were used by Decedent in the manner in which they were intended or reasonably foreseeable to Tobacco Defendants.

8.    Tobacco Defendant's cigarette products failed to perform as safely as Decedent expected it would in that they caused him to develop bladder cancer because of his exposure and inhalation of cigarette smoke from its cigarette products.

10

9.     Tobacco Defendant's cigarette products suffered from a manufacturing and design defect in that they contained arsenic, carcinogens, toxic chemicals, toxic gases, nicotine, tars, and other substances that it knew or should have known were extremely harmful in that exposure to such substances causes injuries and death, and for which there were available materials to substitute and/or manufacturing methods to reduce and/or eliminate these substances in the design and manufacture of the product.

10.     As a direct and proximate result of these Tobacco Defendant's negligent acts and/or omissions, Decedent developed bladder cancer and suffered damages therefrom including death which has also caused injuries to Decedent's wrongful death beneficiaries.

WHEREFORE, Plaintiff, Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

### COUNT 4 – SURVIVAL ACT (NEGLIGENCE) VS. R.J. REYNOLDS TOBACCO COMPANY

1.     Plaintiff incorporates by reference Count 5 as if fully asserted herein.

2.     As a direct and proximate result of Tobaccos Defendant's acts and omissions alleged above, Decedent developed bladder cancer, experienced conscious pain and suffering before his death, and caused Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of

$50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT 5 – WRONGFUL DEATH (STRICT LIABILITY: DESIGN DEFECT & FAILURE TO WARN) VS. R.J. REYNOLDS TOBACCO COMPANY

1.    Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.    Tobacco Defendant designed, manufactured, and sold its branded cigarette products and other tobaccos products to Decedent, which also contained menthol.

3.    The aforesaid cigarette products were distributed, supplied, sold, and/or otherwise placed into the stream of commerce, and/or caused to be placed into the stream of commerce, by Tobacco Defendant.

4.    Decedent purchased and was exposed to Tobacco Defendant's cigarette products over many years during which time smoke from Tobacco Defendants' cigarette products were breathed in and inhaled by Decedent, which caused or contributed to him developing bladder cancer.

5.    At the time Tobacco Defendant designed, manufactured, advertised, marketed, distributed, and/or sold the aforesaid cigarette products, such products were expected to, and did, reach Decedent in a condition without substantial change from that in which such products were when within the possession of Tobacco Defendant.

6.    Tobacco Defendant's cigarette products were in a condition unreasonably dangerous to users, like Decedent, and said products were expected to and did reach Decedent without substantial change affecting that condition.

7.    Tobacco Defendant's cigarette products were, by way of defective design and failures to warn of the health hazards of its "light" or "filtered" cigarette products, in a condition

unreasonably dangerous to users, like Decedent, and said products were expected to and did reach Decedent without substantial change affecting that condition.

8.     Tobacco Defendant's cigarette products were unreasonably dangerous due to their design, as described above, and its failures to warn of cancer and the health risks of use when Decedent first smoked its cigarettes products and subsequently became addicted.

9. Tobacco Defendant's cigarette products were dangerous beyond the expectation of the ordinary user or consumer when used as intended or in a manner reasonably foreseeable by Tobacco Defendants.

10.    Tobacco Defendant's cigarette products were unreasonably dangerous because a less dangerous design and/or modification was economically and scientifically feasible and because Defendant could have simply warned of the health hazards associated with its cigarette products.

11.    Tobacco Defendant's cigarette products were in an unreasonably dangerous and defective condition in that such products:

  (a)    Contained, by design, tar, nicotine, carcinogens, toxic gasses, and other substances deleterious, poisonous, and highly harmful to Decedent;

  (b)    Contained by design tar, nicotine, carcinogens, toxic gasses, and other substances deleterious, poisonous, and highly harmful when and after it became feasible to design and manufacture reasonably comparable products not containing those substances or containing less of them;

  (c)    Failed to filter the harmful substances so that during ordinary use, such materials would not be liberated into the air and/or breathed by the smoker such as Decedent;

  (d)    Through the use of filters, manufacturing methods, engineering methods, and/or the materials utilized were designed in such a way to make smoking its cigarette products more tasteful, pleasurable and less likely to trigger the smoker's own biological self-defense mechanism which otherwise may have limited and/or altered the

13

smoker's behavior in such a way that the smoker may have smoked less, inhaled less deeply or not at all;

(e)    Prior to 1966 and after Decedent had already been exposed to and addicted to its cigarette products for over  10 years, failing to warn of the addictive nature of its cigarette products and the adverse health effect from using such products and/or the potential to develop an addiction and suffer health effects from consistent exposure to cigarette smoke from its cigarette products as a bystander;

(f)    Designing, manufacturing, selling, and marketing cigarette products as "light" or "filtered" that it knew "were no safer, and were even more hazardous than other "regular" cigarettes;

(g)    Failing to disclose and/or warn that its "light" or "filtered" cigarettes would not be less hazardous as smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine, and other harmful substances would not be reduced;

(h)    Continuing to fraudulently market and sell multiple brands as "light" or "filtered" and causing smokers, such as Decedent, to wrongly believe that its "light" or "filtered" cigarettes reduce the harms of smoking;

(i)    Utilized tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

(j)    The nature and degree of the danger of its cigarette products were beyond the expectation of the ordinary consumer when used as intended or in a reasonably foreseeable manner;

(k)    Designing and manufacturing their cigarettes to be inhalable and thus unreasonably dangerous; and/or,

(l)    Placing additives and ingredients in cigarettes to make them easier to inhale and addictive.

12.    Decedent, unaware of the defective and unreasonably dangerous condition of Tobacco Defendant's cigarette products prior to 1966, and at a time when such products were being used for the purposes for which they were intended, was exposed to and breathed in smoke

from Tobacco Defendant's cigarette products.

13.    Tobacco Defendant knew that its cigarette products would be used without inspection for defects, and by placing them on the market represented that they would be safe.

14.    As a direct and proximate result of the foregoing acts or omissions on the part of Tobacco Defendant and the unreasonably dangerous condition of its cigarette products, by way of design defect and failures to warn, Tobacco Defendant is strictly liable to Decedent for his injuries therefrom, including Decedent's development of bladder cancer, his death, and the injuries to Decedent's wrongful death beneficiaries.

WHEREFORE, Plaintiff Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

### COUNT 6 – SURVIVAL ACT
### (STRICT LIABILITY: FAILURE TO WARN & DESIGN DEFECT)
### VS. R.J. REYNOLDS TOBACCO COMPANY

1.    Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.    As a direct and proximate result of Tobaccos Defendant's acts and omissions alleged above, Decedent developed bladder cancer, experienced conscious pain and suffering before his death, and caused Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of

$50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

Respectfully Submitted,

**GIANARIS TRIAL LAWYERS**

Attorney for Plaintiff

/s/ Dirk Hennessey
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
Suvir Dhar, IL #6304709
Dirk Hennessey, IL #6311069
One Design Mesa
Collinsville, IL 62234
618-816-9999
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
sdhar@lawforpeople.com
dirk@lawforpeople.com
**ATTORNEYS FOR PLAINTIFF**

Filed with the Twentieth Judicial Circuit
Kiann Williams Sr. Clerk of the Circuit Court
St. Clair County, Illinois
On November 18, 2025 at 03:08 PM by CLM
Transaction number: 109803313-01



IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

MICHAEL COLLINS

Plaintiff/Petitioner

Vs                                                  Case No.   2025 LA 001167

R.J. REYNOLDS TOBACCO COMPANY

Defendant/Respondent

## INITIAL MANDATORY STATUS CONFERENCE SETTING ASSIGNMENT

Date: 1/12/2026    Time: 09:00 AM    Room: 401

The above-style case is assigned to:  HON. CHRISTOPHER KOLKER

Counsel familiar with the case and authorized to act is ordered to appear for an Initial Mandatory Status Conference on the above date, time and courtroom pursuant to Local Rul 6.07, and Supreme Court Rule 218.

At the aforesaid conference the following shall be considered:

1. Service upon all of the parties;

2. Whether the case will be jury or no-jury;

3. The nature, issues, and complexity of the case;

4. Simplification of the issues;

5. Amendments and challenges to the pleadings;

6. Admissions of fact and documents;

7. Limitations of discovery, including but not limited to written discovery, depositions, and opinion witnesses;

8. Third parties;

9. Scheduling of settlement conferences;

10. Necessity of subsequent case management conferences;

11. Trial settings.

Office of Chief Judge

ORDER

This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.
Forms are free at ilcourts.info/forms.

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | For Court Use Only |
|---|---|---|
| St. Clair          COUNTY | | |

| **Instructions ▼** | | |
|---|---|---|
| Enter above the county name where the case was filed. | MARCI COLLINS, Individually and as Special Admin. <br> **Plaintiff / Petitioner** (First, middle, last name) | |
| Enter your name as Plaintiff/Petitioner. | v. | |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | **Defendants / Respondents** (First, middle, last name) <br> AMEREN ILLINOIS COMPANY, Et. AL. | 2025LA001167 <br> **Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** (Check this box if this is not the 1st Summons issued for this Defendant.) | |

## IMPORTANT: You have been sued.

- Read all documents attached to this *Summons*.

- You MUST file an official document with the court within the time stated on this *Summons* called an *Appearance* and a document called an *Answer/Response*. If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees*.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

### Plaintiff/Petitioner:

**Do not use this form** in these types of cases:

- All criminal cases
- Detinue
- Order of protection
- Divorce

- Administrative review cases
- Eviction
- Stalking no contact orders
- Paternity

- Adult guardianship
- Foreclosure
- Civil no contact orders
- Small Claims

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk: 2025LA001167

| | | |
|---|---|---|
| In **1a**, enter the name and address of the first Defendant/ Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** **Defendant/Respondent's address and service information:** | |

a.  Defendant/Respondent's primary address/information for service:
Name *(First, Middle, Last):*  R.J. REYNOLDS TOBACCO COMPANY
Registered Agent's name, if any:  ILLINOIS CORPORATION SERVICE COMPANY
Street Address, Unit #:  801 ADLAI STEVENSON DRIVE
City, State, ZIP:  SPRINGFIELD, IL, Sangamon, 62703-4261
Telephone:  _____  Email: _____

| | |
|---|---|
| In **1b**, enter a second address for the first Defendant/ Respondent, if you have one. | b.  If you have more than one address where Defendant/Respondent might be found, list that here:
Name *(First, Middle, Last):* _____
Street Address, Unit #: _____
City, State, ZIP: _____
Telephone: _____  Email: _____ |
| In **1c**, check how you are sending your documents to this Defendant/ Respondent. | c.  Method of service on Defendant/Respondent:
☐ Sheriff   ☐ Sheriff outside Illinois: _____
*County & State*
☐ Special process server   ☐ Licensed private detective |

| | |
|---|---|
| Check here if you are serving more than 1 Defendant/ Respondent. Attach an *Additional Defendant/ Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached. | ☐ **I am serving more than 1 Defendant/Respondent.**
I have attached _____ *Additional Defendant/Respondent Address*
*Number*
and *Service Information* forms. |
| In **2a**, enter the amount of money owed to you. Check **2b** if you are asking for the return of tangible personal property. | **2.** **Information about the lawsuit:**
a.  Amount claimed:  $ _____
☐ b.  I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession). |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3.** **Contact information for the Plaintiff/Petitioner:**
Name *(First, Middle, Last):* Gianaris Trial Lawyers LLC
Street Address, Unit #:  1 Design Mesa
City, State, ZIP:  Collinsville, IL 62234
Telephone:  (618) 681-9999   Email:  sdhar@lawforpeople.com |

| | |
|---|---|
| | **GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties. |

| | |
|---|---|
| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.
To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms. |

| | |
|---|---|
| Check **4a** or **4b**. If Defendant/ Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** **Instructions for person receiving this *Summons* (Defendant):**
☒ a.  To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:
Address:  10 PUBLIC SQUARE
City, State, ZIP: BELLEVILLE, IL 62232 |

<table>
<tr><td>

In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.*

</td><td colspan="2">

☐ b.  **Attend court:**
On: _____ at _____ ☐ a.m. ☐ p.m. in _____
       *Date*          *Time*                           *Courtroom*
**In-person at:**

_____
*Courthouse Address*      *City*                  *State*      *ZIP*
OR

</td></tr>
</table>

In **4b**, fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website.

All of this information is available from the Circuit Clerk.

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):
By telephone: _____
            *Call-in number for telephone remote appearance*
By video conference: _____
                 *Video conference website*

_____
*Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk _____ or visit their website
                    *Circuit Clerk's phone number*
at: _____ to find out more about how to do this.
   *Website*

**STOP!**
The Circuit Clerk will fill in this section.

**Witness this Date:** _____

**Clerk of the Court:** 10/21/2025
               Nora McDaniel

*Seal of Court*

KINNIS WILLIAMS, SR. Circuit Clerk

---

**STOP! The officer or process server will fill in the Date of Service**

**Note to officer or process server:**
- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 21 days before the court date, unless 2b is also checked.
  - If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

Date of Service: ___NOV 2 0 2025_____
             *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

Enter the Case Number given by the Circuit Clerk: 2025LA001167

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
**Forms are free at ilcourts.info/forms.**

| STATE OF ILLINOIS, CIRCUIT COURT | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|
| St. Clair _____ COUNTY | | |

| **Instructions** | | |
|---|---|---|
| Enter above the county name where the case was filed. | MARCI COLLINS, Individually and as Special Admin. **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. <br> AMEREN ILLINOIS COMPANY, Et. AL. <br> **Defendant / Respondent** *(First, middle, last name)* | |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | 2025LA001167 <br> **Case Number** |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.\*\***

**My name is** _____ **and I state**
   *First, Middle, Last*

☐ **I served the *Summons*** and Complaint/Petition on the Defendant/Respondent

_____ **as follows:**
*First, Middle, Last*

☐ Personally on the Defendant/Respondent:
   ☐ Male  ☐ Female  ☐ Non-Binary   Approx. Age: _____ Race: _____
   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address, Unit#: _____
   City, State, ZIP: _____

☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address, Unit#: _____
   City, State, ZIP: _____
   And left it with: _____
                     *First, Middle, Last*
   ☐ Male  ☐ Female  ☐ Non-Binary   Approx. Age: _____ Race: _____
   and by sending a copy to this defendant in a postage-paid, sealed envelope to the
   above address on this date: _____ .

☐ On the Corporation's agent, _____
                               *First, Middle, Last*
   ☐ Male  ☐ Female  ☐ Non-Binary   Approx. Age: _____ Race: _____
   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____

☐ **I was not able to serve the** *Summons* **and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

2.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

3.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

**By:**                                                    **FEES**

_____          Service and Return:  $ _____

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

*Signature by:*   ☐ Sheriff          Miles _____  $ _____
                  ☐ Sheriff outside Illinois:          Total          $ _____

_____
*County and State*
                  ☐ Special process server
                  ☐ Licensed private detective

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

| Print Form | Save Form | Reset Form |

Electronically Filed
Kinnis Williams, Sr.
Circuit Clerk
Janice Mendiola
2025LA001167
St. Clair County
10/17/2025 9:46 AM
34934541

## IN THE CIRCUIT COURT OF
## THE JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

MARCI COLLINS, Individually and as Special ) 
Administrator for the Estate of )
MICHAEL COLLINS, )
            )
         Plaintiff, )
            )    Case No.: 2025LA001167
     vs. )
            )
AMEREN ILLINOIS COMPANY, )
R.J. REYNOLDS TOBACCO COMPANY, )
            )
         Defendants. )

### COMPLAINT

Plaintiff, Marci Collins, Individually and as Special Administrator for the Estate of Michael Collins ("Decedent"), through Ted N. Gianaris, Joshua Edelson, Suvir Dhar, and Dirk Hennessey of Gianaris Trial Lawyers, LLC, states and alleges as follows for the Complaint against the Defendants named herein:

### FACTS COMMON TO ALL COUNTS

1.      Decedent, Michael Collins, was a resident of Jerseyville, Jersey County, Illinois and resided at 26911 Robin Lane, Jerseyville, Jersey County, Illinois 62052 until his death in 2024.

2.      Defendant, Ameren Illinois Company ("Ameren"), is a corporation organized and existing under the laws of Illinois that is authorized to do business in Illinois, which maintains a registered office for service of process in Sangamon County, Illinois and that has, at all times relevant herein, conducted business in St. Clair County, Illinois at or near St. Clair, St. Clair County, Illinois.

3.      Defendant, R.J. Reynolds Tobacco Company ("RJR") is a corporation organized and existing under the laws of North Carolina that is authorized to do business in Illinois, which

maintains a registered office for service of process in Sangamon County, Illinois and that has, at all times relevant herein, conducted business in St. Clair County, Illinois at or near St. Clair, St. Clair County, Illinois.

4.      The foregoing defendants, as set forth in paragraphs 2 through 3, will be collectively referred to as "Defendants" throughout this Complaint and are jointly and severally liable in that they caused or contributed to Decedent's cancer and injuries.

5.      Decedent was born on July 23, 1958, and lived in Illinois nearly his whole life.

6.      From 1978 to 2008 Decedent was a member of the union Plumbers and Pipefitters Local 553 and he worked at various locations within Illinois, where he was exposed to benzene and other toxic chemicals.

7.      Decedent worked at an Ameren facility where he did the same pipefitting work and was exposed to benzene and VOCs while doing said work.

8.      Decedent was diagnosed with bladder cancer on October 20, 2023.

9.      Specifically, decedent was diagnosed with: Bladder, right lateral wall and bladder neck, TURBT: invasive high-grade papillary urothelial carcinoma.

10.     Decedent developed Stage 3 bladder cancer.

11.     As a direct and proximate result of said bladder cancer, Decedent died on April 18, 2024.

12.     This Court has subject matter jurisdiction over this cause, as there is no complete diversity, and personal jurisdiction over all defendants in the State of Illinois as Decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene and benzene-containing products within St. Clair County, Illinois.

13.     Venue is proper in this court under 735 ILCS § 5/2-101(1-2) because St. Clair County, Illinois is the county in which the actions or omissions occurred and out of which the Decedent's cause of action arose.

## COUNT 1 – WRONGFUL DEATH (NEGLIGENCE)
## VS. DEFENDANT AMEREN

1.      Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.      While Defendant Ameren owned and/or operated the facilities and/or the associated refineries/pipelines, and during the times Decedent resided, stayed, worked, and/or spent time near these facilities, thousands of pounds of benzene, other benzene-containing pollutants, and other contaminants were emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water.

3.      While Decedent resided, stayed, spent time, and/or worked near the aforementioned facilities, Decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene and other toxic chemicals, which was emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water by Defendant Ameren.

4.      Defendant Ameren knew or should have known that benzene and other toxic chemicals had a toxic, poisonous, and highly deleterious effect upon the health of person inhaling, ingesting, or otherwise absorbing the benzene or other toxic chemicals, such as Decedent.

5.      At all relevant times, Defendant Ameren knew or should have known that:

      (a)     Benzene and benzene-containing pollutants are highly toxic;

      (b)     Benzene and benzene-containing pollutants should not be emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water;

      (c)     If benzene and benzene-containing pollutants are released into the environment, sufficient warnings must be provided, and effective remedial measures must be taken; and/or

      (d)     They did not do anything substantial to stop, clean up or, in any way, remediate the Benzene Plume or pollution to stop its harmful effects it has had on Decedent and/or the surrounding community.

3

6.      Defendant Ameren had actual knowledge that such conduct posed a high probability of a known health risk to the people living and working, such as Decedent, in and around their facilities.

7.      Despite having this knowledge, Defendant Ameren negligently constructed, maintained, managed, and/or operated facilities and/or the associated refineries and pipelines, causing thousands of pounds of benzene and other benzene and other benzene-containing pollutants to be negligently and intentionally emitted, leaked, spilled, dumped, and otherwise discharged into the air and surface/ground water. The release of benzene and other toxic chemicals from these facilities occurred throughout the time of their operations, causing the air and soil to be contaminated and creating a groundwater borne toxic plume of benzene-containing pollutants to extend beyond the boundaries of these aforementioned facilities and into the adjoining neighborhoods and communities.

8.      At all relevant times, Defendant Ameren had a duty to exercise reasonable care and caution for the safety, health, and welfare of Decedent and others living, working, and going to school in close proximity to the facilities and/or the associated refineries and pipelines where benzene and other toxic chemicals were being used, processed, stored, emitted, and/or transported.

9.      Defendant Ameren breached its duty and failed to exercise ordinary care in one or more of the following respects:

(a)      Defendant Ameren included benzene in its products and processes, even though it was reasonably foreseeable that persons such as Decedent living, staying, and working in close proximity to the facilities and associated pipelines and facilities in and around the facilities would inhale, ingest, or otherwise absorb the carcinogen;

(b)      Defendant Ameren included benzene in their products and processes at the facilities and associated pipelines and facilities while Defendant Ameren knew or should have known that the benzene would have a toxic, poisonous, and highly deleterious effect upon

4

the health of persons ingesting or otherwise absorbing the carcinogen;

(c)    Defendant Ameren included benzene in their products and processes when adequate substitutes for the carcinogen were available;

(d)    Defendant Ameren failed to sufficiently test, monitor, and research the human health effects on benzene and benzene-containing products or processes on residents living, working, or going to daycare or school in close proximity to where the benzene was being used when Defendant Ameren knew or should have known that benzene would have a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting, or otherwise absorbing the carcinogen;

(e)    Defendant Ameren failed to alert or warn Decedent and other persons living and/or working in close proximity to the facilities regarding the human health effects of benzene and benzene-containing products or processes, to determine and better understand the hazards to which such residents and students, such as Decedent, would be exposed while living, working, and going to school near said products and processes;

(f)    Defendant Ameren failed to alert or warn Decedent and other persons living and/or working in close proximity to the facilities of the likelihood of benzene contamination in the air, water, and/or ground/groundwater;

(g)    Defendant Ameren failed to alert or warn Decedent and other persons living and/or working in close proximity to the facilities concerning the dangers of inhaling, ingesting, or otherwise absorbing benzene or other toxic chemicals;

(h)    Defendant Ameren failed to recommend sufficient engineering controls or safeguards to reduce and/or eliminate benzene exposure to Decedent and other persons living, working, or going to daycare or school in close proximity to the facilities.

(i)    Defendant Ameren failed to recall and/or cease using benzene and benzene-containing products and processes which they had designed, manufactured, sold, distributed, or were using at the facilities and/or pipelines and/or refineries;

(j)    Defendant Ameren failed to take reasonable and prompt action to contain and/or clean up the benzene and benzene-containing pollutants that had been released into the environment;

5

(k) Defendant Ameren failed to comply with state and federal regulations regarding the handling, storage, and/or removal of benzene and benzene-containing pollutants, including being cited numerous times for violating the Illinois and United States environmental protection laws for released of benzene and other dangerous chemicals;

(l) Defendant Ameren knew or should have known about the presence of pollutants such as benzene that were released into the air and spilled, leaked, or dumped into the ground and discharged into the surface/ground water, and they failed to take necessary steps to prevent such carcinogenic pollutants from leaving the borders of their premises;

(m) Defendant Ameren failed to properly maintain their benzene storage facilities, petroleum storage facilities, benzene pipelines, and petrochemical pipelines so as to prevent the leaking or release of benzene into the ground, groundwater, and air in and around the Facilities and/or pipelines and/or refinery;

(n) Defendant Ameren failed to properly clean up or otherwise address any spills or leaks of benzene or petrochemicals and petroleum-containing benzene to prevent these substances from moving through the air, ground, and groundwater in and around the facilities and pipelines and refineries.

(o) Defendant Ameren covered up and hid releases, leaks, and/or spills of benzene as well as the malfunction of equipment designed to prevent the release of such spills, leaks, and/or releases of benzene; and/or,

(p) Defendant Ameren hid and covered up the relationship between benzene exposure and cancer, including the relationship between low level benzene exposure and cancer, and benzene exposure and the contraction of bladder cancer.

10.    While Defendant Ameren owned and/or operated facilities, and during the time decedent resided and/or worked near the facilities, decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene fumes emanating from benzene and certain benzene containing materials and products, which were processed, produced, emitted, manufactured, sold, distributed, marketed, and/or otherwise used by Ameren.

11.    As a direct and proximate result of the carelessness and negligence of Defendant

6

Ameren, decedent was caused to be exposed to, inhaled, ingested, and/or otherwise absorbed benzene and other toxic chemicals, thereby causing, or contributing to cause, decedent to develop bladder cancer.

12.      As a direct and proximate result of the unreasonably dangerous condition of the Defendant Ameren's benzene, materials, and/or products and other toxic chemicals, decedent was exposed to and inhaled, ingested, or otherwise absorbed benzene and other toxic chemicals in sufficient amounts to cause disease, including the contraction of bladder cancer and/or other harms and to suffer damages therefrom including death which has also caused injuries to decedent's wrongful death beneficiaries.

WHEREFORE, Plaintiff, Marci Collins, Individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Defendant Ameren, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

**COUNT 2 – SURVIVAL ACT (NEGLIGENCE)
VS. DEFENDANT AMEREN**

1.      Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.      As a direct and proximate result of Defendant Ameren's acts and omissions alleged above, Decedent was exposed to benzene, as alleged above, which caused Decedent to develop bladder cancer, experience conscious pain and suffering before his death, and resulted in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against

Defendant Ameren, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT 3 – R.J. REYNOLDS TOBACCO COMPANY

1.    Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.    In approximately 1974, Decedent smoked his first cigarette that was designed, manufactured, advertised, marketed, distributed, and/or sold by Defendant R.J. Reynolds Tobacco Company and (Tobacco Defendant) and Decedent continued to habitually smoke until approximately 1991, including primarily Salem Shorts.

3.    Prior to selling and/or distributing their cigarette products that Decedent purchased and smoked, Tobacco Defendant knew that exposure, inhalation, and ingestion of cigarette smoke was harmful to human beings and that it could cause injuries, including bladder cancer.

4.    Tobacco Defendant's cigarette products contained latent characteristics and/or latent functional defects at the time they were manufactured and at the time Decedent was exposed to them in that said product contained tar, nicotine, and other harmful substances that it knew or in the exercise of reasonable care, should have known would cause injuries to those who regularly used them.

5.    Tobacco Defendant was in the business of designing, manufacturing, advertising, marketing, distributing, and/or selling cigarette products during the times pertinent to this suit, and knew that Decedent and others similarly situated would encounter its cigarette products, and would be exposed to the inhalation of the smoke from said products and result in the development of fatal and life-threatening injuries including, but not limited to, bladder cancer.

6.    Tobacco Defendant were negligent in the following respects:

(a)     Prior to 1966 and after Decedent had already been exposed to and addicted to these its cigarette products, failing to warn of the addictive nature of its cigarette products and the adverse health effects from using such products and/or the potential to develop an addiction and suffer health effects from consistent exposure to cigarette smoke from its cigarette products as a bystander;

(b)     Designing, manufacturing, developing, selling, and marketing cigarette products that were milder, had better taste, and contained nicotine so that foreseeable users, such as Decedent, would find smoking its cigarette products pleasurable and in turn would lead Decedent, and others similarly situated, to begin smoking and/or to increase consumption;

(c)     Designing, manufacturing, selling, and marketing cigarette products as "light" or "filtered" that it knew were no safer, and were even more hazardous than other "regular" cigarettes;

(d)     Failing to disclose and/or warn that its "light" or "filtered" cigarettes would not be less hazardous as smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine, and other harmful substances would not be reduced;

(e)     Continuing to fraudulently market and sell multiple brands as "light" or "filtered" and causing smokers, such as Decedent, to wrongly believe that its "light" or "filtered" cigarettes reduce the harms of smoking;

(f)     Failing to develop and utilize alternative design, manufacturing methods, and/or materials to reduce and/or eliminate harmful materials and/or characteristics from the cigarette products it designed, manufactured, advertised, marketed, distributed, and/or sold;

(g)     Continuing to manufacture, distribute, and sell cigarette products when it knew at the time of said manufacture, distribution, and/or sale that such products could cause, and in fact were more likely to cause injuries, including cancer, to foreseeable users, such as Decedent, when used as intended;

(h)     Concealing information while affirmatively misrepresenting to Decedent and other members of the public through advertising, "informational" communications, sponsorship of sports activities, concerts, and other events, testimony and public statements by officers, agents, and employees of the cigarette manufacturers, by labels and otherwise, that its cigarette products manufactured, distributed and/or sold were safe and/or not proven to be dangerous

9

in their ordinary and foreseeable use, which material misrepresentations induced Decedent to unknowingly use and/or continue to use its cigarette products and expose himself to the hazards of developing disease and/or suffering injuries, including cancer;

(i)   Failing to test and/or adequately test its cigarette products before offering them for sale and use by Decedent, and other persons similarly situated;

(j)   Failing to remove and recall all said cigarette products from the stream of commerce and the marketplace upon ascertaining that said products would cause serious injuries, including cancer, which is permanent and fatal;

(k)   Manipulating, failing to reduce, and/or eliminating nicotine from its cigarette products to prevent Decedent, who was addicted to the nicotine in its cigarette products, from quitting and/or reducing consumption;

(l)   Including nicotine, or artificially high levels of nicotine, in its cigarette products to prevent Decedent, and other persons similarly situated, from quitting and/or reducing consumption;

(m)   Utilizing tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

(n)   Designing and manufacturing cigarettes to be inhalable and thus unreasonably dangerous; and/or,

(o)   Placing additives and ingredients in cigarettes to make them easier to inhale and unreasonably addictive.

7.   Tobacco Defendant's cigarette products that Decedent was exposed to were used by Decedent in the manner in which they were intended or reasonably foreseeable to Tobacco Defendants.

8.   Tobacco Defendant's cigarette products failed to perform as safely as Decedent expected it would in that they caused him to develop bladder cancer because of his exposure and inhalation of cigarette smoke from its cigarette products.

10

9.      Tobacco Defendant's cigarette products suffered from a manufacturing and design defect in that they contained arsenic, carcinogens, toxic chemicals, toxic gases, nicotine, tars, and other substances that it knew or should have known were extremely harmful in that exposure to such substances causes injuries and death, and for which there were available materials to substitute and/or manufacturing methods to reduce and/or eliminate these substances in the design and manufacture of the product.

10.     As a direct and proximate result of these Tobacco Defendant's negligent acts and/or omissions, Decedent developed bladder cancer and suffered damages therefrom including death which has also caused injuries to Decedent's wrongful death beneficiaries.

WHEREFORE, Plaintiff, Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT 4 – SURVIVAL ACT (NEGLIGENCE) VS. R.J. REYNOLDS TOBACCO COMPANY

1.      Plaintiff incorporates by reference Count 5 as if fully asserted herein.

2.      As a direct and proximate result of Tobaccos Defendant's acts and omissions alleged above, Decedent developed bladder cancer, experienced conscious pain and suffering before his death, and caused Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of

$50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

### COUNT 5 – WRONGFUL DEATH (STRICT LIABILITY: DESIGN DEFECT & FAILURE TO WARN) VS. R.J. REYNOLDS TOBACCO COMPANY

1.      Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.      Tobacco Defendant designed, manufactured, and sold its branded cigarette products and other tobaccos products to Decedent, which also contained menthol.

3.      The aforesaid cigarette products were distributed, supplied, sold, and/or otherwise placed into the stream of commerce, and/or caused to be placed into the stream of commerce, by Tobacco Defendant.

4.      Decedent purchased and was exposed to Tobacco Defendant's cigarette products over many years during which time smoke from Tobacco Defendants' cigarette products were breathed in and inhaled by Decedent, which caused or contributed to him developing bladder cancer.

5.      At the time Tobacco Defendant designed, manufactured, advertised, marketed, distributed, and/or sold the aforesaid cigarette products, such products were expected to, and did, reach Decedent in a condition without substantial change from that in which such products were when within the possession of Tobacco Defendant.

6.      Tobacco Defendant's cigarette products were in a condition unreasonably dangerous to users, like Decedent, and said products were expected to and did reach Decedent without substantial change affecting that condition.

7.      Tobacco Defendant's cigarette products were, by way of defective design and failures to warn of the health hazards of its "light" or "filtered" cigarette products, in a condition

unreasonably dangerous to users, like Decedent, and said products were expected to and did reach Decedent without substantial change affecting that condition.

8.    Tobacco Defendant's cigarette products were unreasonably dangerous due to their design, as described above, and its failures to warn of cancer and the health risks of use when Decedent first smoked its cigarettes products and subsequently became addicted.

9.  Tobacco Defendant's cigarette products were dangerous beyond the expectation of the ordinary user or consumer when used as intended or in a manner reasonably foreseeable by Tobacco Defendants.

10.    Tobacco Defendant's cigarette products were unreasonably dangerous because a less dangerous design and/or modification was economically and scientifically feasible and because Defendant could have simply warned of the health hazards associated with its cigarette products.

11.    Tobacco Defendant's cigarette products were in an unreasonably dangerous and defective condition in that such products:

    (a)    Contained, by design, tar, nicotine, carcinogens, toxic gasses, and other substances deleterious, poisonous, and highly harmful to Decedent;

    (b)    Contained by design tar, nicotine, carcinogens, toxic gasses, and other substances deleterious, poisonous, and highly harmful when and after it became feasible to design and manufacture reasonably comparable products not containing those substances or containing less of them;

    (c)    Failed to filter the harmful substances so that during ordinary use, such materials would not be liberated into the air and/or breathed by the smoker such as Decedent;

    (d)    Through the use of filters, manufacturing methods, engineering methods, and/or the materials utilized were designed in such a way to make smoking its cigarette products more tasteful, pleasurable and less likely to trigger the smoker's own biological self-defense mechanism which otherwise may have limited and/or altered the

13

smoker's behavior in such a way that the smoker may have smoked less, inhaled less deeply or not at all;

(e)   Prior to 1966 and after Decedent had already been exposed to and addicted to its cigarette products for over   10 years, failing to warn of the addictive nature of its cigarette products and the adverse health effect from using such products and/or the potential to develop an addiction and suffer health effects from consistent exposure to cigarette smoke from its cigarette products as a bystander;

(f)   Designing, manufacturing, selling, and marketing cigarette products as "light" or "filtered" that it knew were no safer, and were even more hazardous than other "regular" cigarettes;

(g)   Failing to disclose and/or warn that its "light" or "filtered" cigarettes would not be less hazardous as smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine, and other harmful substances would not be reduced;

(h)   Continuing to fraudulently market and sell multiple brands as "light" or "filtered" and causing smokers, such as Decedent, to wrongly believe that its "light" or "filtered" cigarettes reduce the harms of smoking;

(i)   Utilized tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

(j)   The nature and degree of the danger of its cigarette products were beyond the expectation of the ordinary consumer when used as intended or in a reasonably foreseeable manner;

(k)   Designing and manufacturing their cigarettes to be inhalable and thus unreasonably dangerous; and/or,

(l)   Placing additives and ingredients in cigarettes to make them easier to inhale and addictive.

12.   Decedent, unaware of the defective and unreasonably dangerous condition of Tobacco Defendant's cigarette products prior to 1966, and at a time when such products were being used for the purposes for which they were intended, was exposed to and breathed in smoke

14

from Tobacco Defendant's cigarette products.

13.     Tobacco Defendant knew that its cigarette products would be used without inspection for defects, and by placing them on the market represented that they would be safe.

14.     As a direct and proximate result of the foregoing acts or omissions on the part of Tobacco Defendant and the unreasonably dangerous condition of its cigarette products, by way of design defect and failures to warn, Tobacco Defendant is strictly liable to Decedent for his injuries therefrom, including Decedent's development of bladder cancer, his death, and the injuries to Decedent's wrongful death beneficiaries.

WHEREFORE, Plaintiff Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

**COUNT 6 – SURVIVAL ACT**
**(STRICT LIABILITY: FAILURE TO WARN & DESIGN DEFECT)**
**VS. R.J. REYNOLDS TOBACCO COMPANY**

1.     Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.     As a direct and proximate result of Tobaccos Defendant's acts and omissions alleged above, Decedent developed bladder cancer, experienced conscious pain and suffering before his death, and caused Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Marci Collins, individually and as Special Administrator of the Estate of Michael Collins ("Decedent"), prays this Court to enter judgment in her favor and against Tobacco Defendant, jointly and severally, to award compensatory damages in excess of

15

$50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

Respectfully Submitted,

**GIANARIS TRIAL LAWYERS**

Attorney for Plaintiff

/s/ Dirk Hennessey_____
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
Suvir Dhar, IL #6304709
Dirk Hennessey, IL #6311069
One Design Mesa
Collinsville, IL 62234
618-816-9999
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
sdhar@lawforpeople.com
dirk@lawforpeople.com
**ATTORNEYS FOR PLAINTIFF**

Electronically Filed
Kinnis Williams, Sr.
Circuit Clerk
Nora McDaniel
2025LA001167
St. Clair County
11/21/2025 8:08 AM
35465135

# IN THE CIRCUIT COURT TWENTIETH JUDICIAL
## CIRCUIT ST. CLAIR COUNTY, ILLINOIS

MARCI COLLINS, Individually and as Special
Administrator for the Estate of MICHAEL
COLLINS,

Plaintiff,

v.

AMEREN ILLINOIS COMPANY, R.J REYNOLDS
TOBACCO COMPANY

Defendants.

Index No: 2025LA001167

Job ID: 76898

## AFFIDAVIT OF SERVICE

STATE OF ILLINOIS    )
                     ) ss.:
COUNTY OF SANGAMON )

I, JOHN PENNELL, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On November 20, 2025 at 08:45 PM (UTC), I served the within **SUMMONS, ORDER AND COMPLAINT** upon **AMEREN ILLINOIS COMPANY** at **600 S 2nd Street, Suite 104, Springfield, IL, 62704** in the manner indicated below:

CORPORATION: By delivering a true copy of the aforementioned documents to CHERYL HICKS, Able to Accept, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|-----|--------------------|--------------|-----|--------|--------|
| Female | African American | Brown | 51-61 Years | 5" 4' To 5" 8' | 131-160 Lbs |
| Comment: | | | | | |

Under the penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil procedure, the undersigned certifies that the above statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid he verily believes the same to be true.

JOHN PENNELL
License No. 115.002074
Legalex Litigation Support Services
C/O Counsel Press Inc., P.O.Box 25292, New York, NY, 10087-5292

Electronically Filed
Kinnis Williams, Sr.
Circuit Clerk
Nora McDaniel
2025LA001167
St. Clair County
11/21/2025 8:08 AM
35465135

IN THE CIRCUIT COURT OF THE 20TH JUDICIAL
CIRCUIT ST. CLAIR COUNTY, ILLINOIS

|  |  |
|---|---|
| MARCI COLLINS, Individually and as Special Administrator for the Estate of MICHAEL COLLINS,<br><br>Plaintiff,<br><br>V.<br><br>AMEREN ILLINOIS COMPANY, R.J REYNOLDS TOBACCO COMPANY<br><br>Defendants. | Index No: 2025LA001167<br>Job ID: 76899 |

## AFFIDAVIT OF SERVICE

STATE OF ILLINOIS     )
                 ) ss.:
COUNTY OF SANGAMON )

I, JOHN PENNELL, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On November 20, 2025 at 08:15 PM (UTC), I served the within **SUMMONS, ORDER AND COMPLAINT** upon **R.J. Reynolds Tobacco Company at 801 Adlai Stevenson Drive, Springfield, IL, 62703** in the manner indicated below:

CORPORATION: By delivering a true copy of the aforementioned documents to BAYLON ELFGEN, Able to Accept, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Male | Caucasian | Brown | 21-34 Years | Over 6" | Over 200 Lbs |
| Comment: | | | | | |

Under the penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil procedure, the undersigned certifies that the above statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid he verily believes the same to be true.

_____
JOHN PENNELL
License No. 115.002074
Legalex Litigation Support Services
C/O Counsel Press Inc., P.O.Box 25292, New York, NY, 10087-5292

```
Case: 2025LA001167      COLLINS MICHAEL vs R.J. REYNOLDS TOBACCO      DATE: 2025-12-11
Type: TORT - MONEY DAMAGES    Judge: KOLKER CHRISTOPHER    Jury Trial:     TIME: 10.26.27
From: 00/00/0000 To: 99/99/9999 All Case Entries    Last Date First View
Filed: 10/17/2025 Status: OPEN on 10/17/2025
           CASE PARTICIPANTS NAMES                      ATTORNEYS
           -----------------------                      ---------
PLA        COLLINS MICHAEL                              HENNESSEY DIRK J
DEF        R.J. REYNOLDS TOBACCO COMPANY
DEF        AMEREN ILLINOIS COMPANY
ADM        COLLINS MARCI                                HENNESSEY DIRK J


DATE
----------
11/21/2025 SUMMONS RETURNED SERVICE RJ REYNOLDS FILED BY
           Plaintiff COLLINS MICHAEL
11/21/2025 SUMMONS RETURNED SERVICE AMEREN ILLINOIS FILED BY
           Plaintiff COLLINS MICHAEL
11/18/2025 INITIAL MANDATORY STATUS CONFERENCE SETTING ASSIGNMENT
           Document IMDCSA.DOC Was Printed
           ASSIGN ORD/STAT CONFERENCE Jan 12,2026 09:00AM Rm401
10/21/2025 SUMMONS ISSUED R.J. REYNOLDS FILED BY Plaintiff COLLINS MICHAEL
10/21/2025 SUMMONS ISSUED AMEREN ILLINOIS COMPANY FILED BY
           Plaintiff COLLINS MICHAEL
10/17/2025 TORT - MONEY DAMAGES Fee $316.00 FILED BY Plaintiff COLLINS MICHAEL
10/17/2025 AFFIDAVIT FILED BY Plaintiff COLLINS MICHAEL
10/17/2025 COMPLAINT FILED Plaintiff COLLINS MICHAEL
           Defendant R.J. REYNOLDS TOBACCO COMPANY
```